We'll turn to the next case, Fletcher v. ABM Building. Fletcher v. ABM Building Value May it please the Court, my name is Lori Morrison and I represent the appellant Chrissy Fletcher in this case. Ms. Fletcher is an African American woman. She has medium to dark colored skin, mocha, much like my own. And I reference my skin color and gender so that your honors can visualize the race, color, and ethnicity of the plaintiff. And please, your honors, let me apologize in advance. I'm not trying to offend your honors, but we need to state accurately the sort of intersectional, combined race and gender harassment and discrimination the plaintiff was subjected to. Plaintiff testified that her direct supervisor, defendant Catherine Collado, and supervisor Maria McTato, both not African American, called plaintiff a bitch, black bitch, black, these, this bitch thinks she's the shit, you black people think you're the shit, these effing people think they are the shit, these black people think they are the shit, they also called plaintiff bubble girl, and despite defendant's statements, Lanise Contreras, who was also in the exact same position within the bubble, testified, and she is not African American, that she was never called bubble girl. Also important to note, plaintiff testified that even the term bitch was directed to black women only, including herself. White women were not called bitch. Hispanic women were not called bitch. So all the bitch slurs that were stated were because of plaintiff's race and gender simultaneously. Now, all of these racist slurs- Plaintiff provide details as to when the comments were made and what the context was? Yes, Your Honor. Plaintiff was not able to recall the exact date and time, but plaintiff, but not recalling those details does not render plaintiff's allegations not credible. Still a jury, it's for a jury to decide whether plaintiff's claims were credible or not. But within that, plaintiff did state all the other details. Where these statements were made, the fact that defendant Collado was the primary person to make these statements, the fact that Hal Brager also joined in and called, and he and Catherine Collado would, would consistently call plaintiff and her African American coworkers black, stupid, fucking idiots, many times. Your Honors can reference these statements in A-79 through A-81, A-82, A-83, A-114, A-116, A-119 through A-127. Now these facts- Could you address your pay discrimination claim? I understand that she, that Ms. Fletcher was offered a starting salary of $34,000 and she negotiated that up to $40,000. And then Vanessa Contreras, who's hired after Ms. Fletcher, was initially offered $40,000. The defendants say that Ms. Fletcher, in her negotiations, successfully set a new standard for starting pay, which was then applied to Ms. Contreras. How, where's the discrimination in that sequence of events? Sure, Your Honor. And it's important to note that, again, plaintiff stating that she was treated more negatively because of her race and her gender. And the pay differential is added, is an addition to the racist, sexist slurs that she received. It's not a separate claim. Was she in fact paid something different? At first, yes. She was offered $6,000 less than the other, than other people in the same position. She was offered, but she was, right from the moment from her first paycheck, she was paid at the rate of $40,000, correct? I believe so. Correct, Your Honor. But only- So where is, where is the discrimination? There may have been attempted discrimination, I suppose, but was there any actual disparity in pay? No, Your Honor. But again, even attempted discrimination in terms of salary and in terms of hiring, these are not separate claims. It is added to, these are in addition to plaintiff's other, the racial and sexist slurs that she was referring to. These are not separate claims. They're added on to the racist comments. Now, these comments are enough, and the other information the plaintiff provided are certainly sufficient for a reasonable jury to determine that plaintiff was subjected to a hostile work environment. At the very least, it should go to the jury to decide. Even issues such as credibility, as Your Honors are stating. Now, plaintiff complained for- The standard, the standard for a hostile work environment is that the conduct has to be sufficiently severe or pervasive to alter the conditions of employment. So how were these comments sufficiently severe or pervasive? Or at least, what's the evidence thereof? Your Honor, as plaintiff testified, as I pointed out in the citations, being, plaintiff testified that she was called these slurs many times. And that these slurs increased, calling a black woman a bitch, a black bitch, these fucking black people think they're the shit. Calling them fucking idiots. I can't stand these fucking people. Hearing this as a black woman and seeing your black colleagues being referred to this consistently throughout employment. If that's not creating a severe or pervasive condition that's altering the conditions of the employment, it's hard to state what is. And again, white people, plaintiff testified, weren't referred to by their race. Hispanic people weren't referred to by their race and gender or ethnicity. This was solely African Americans. Now, if I can continue, please. If Your Honors don't have any other questions. Plaintiff complained verbally, A-82-83 through A-128-129, and she complained in writing. After plaintiff's complaints, the racist, sexist slurs occurred on a more frequent basis. A-128-129. Defendant Collado, who plaintiff had complained about making those slurs, disciplined plaintiff in write-ups that led to her firing. Transferred her, which was a demotion from an HR recruiter position to the bubble position as a secretary, four weeks after her written complaints. And defendants fired plaintiff six weeks after her written complaints. Let me ask you a question with respect to the write-ups. Was there any dispute regarding the facts of some of those write-ups? Like, for example, being late 32 times, issues regarding taking directions from managers, not placing individuals as directed by Brader, not following up on emails. Is there any evidentiary dispute regarding those facts? Absolutely, Your Honor, which is why I should again go from a jury, but also, Your Honor, it's very important to note, the factual record does not support defendant's claims that plaintiff somehow was a terrible performer. If Your Honors may note, defendants produce nine documents to show that plaintiff was somehow a terrible performer. Six of those documents are all dated in July 2011, a year and a half before plaintiff was ever fired, and defendants didn't even give plaintiff a write-up about it until a year after that. And two of those nine occurred in July 2012. Well, that's five months before they ever wrote her up about it, but it's only four weeks after plaintiff complained. And then one other was an email which had no date. You see, Your Honor, see, it's a big record. Essay 603, Essay 619, Essay 617, Essay 621, Essay 623, Essay 651, Essay 653, Essay 655, Essay 657, and Essay 671. That is the totality of the documents that defendants provide to state that plaintiff was somehow a poor performer. All of those are a year and a half before she was ever fired, and defendants did not see fit to give her any write-ups about any of it, certainly much less firing her, until she complained. In addition, Your Honors, it's important to note that that is why Collado testified on several occasions that the only reason, the sole reason that they fired plaintiff is because Collado claimed, erroneously claimed, and she admitted that it was false when she made those claims, that plaintiff deleted a spreadsheet that was somehow critical to defendants knowing how to evaluate the problem employees. 6A255 and A256, that is the spreadsheet. Now, this spreadsheet contains employee names that plaintiff copied off the shared drive, building location and supervisor name. All of that information plaintiff never deleted from the system, never removed from the system. She just put them into a spreadsheet for her own record so she can make a reference. Defendants claim that all this was deleted is inaccurate. It's factually inaccurate. Now, the only part that defendants claim- Did she delete a document from the shared drive? Yes, Your Honor. She deleted her document that she created. It was not a document created by defendants in any way. And, again, plaintiff concedes that, yes, the document was deleted, and perhaps in hindsight plaintiff shouldn't have deleted it. But- Did it contain data regarding her co-employees or work-related data? This wasn't personal data, was it? Actually, yes, Your Honor, but I'm letting Your Honors know exactly the data that was in the spreadsheet. Employee name, building location, and supervisor name. The status of 2012, that was excellent, fair, good, no bueno. That is the column that defendants are saying was so critical to knowing if employees were good or not. That was plaintiff's own assessment. All right. You're well over. Yes. You have some time for rebuttal. We'll hear from the other side. Thank you, Your Honor. Thank you. May it please the Court. My name is Craig Benson, and I represent ABM and individual defendant Catherine Collado in this case. Plaintiff is a former human resource employee who worked for the defendant for less than two years. Following months of documented performance problems, the company discovered that she had taken confidential information off of a shared, and I emphasize the word shared, company computer drive, inappropriately emailed that information to her own personal email account. Then deleted the information from the company computer system, and finally attempted to cover her tracks by cleaning out the trash folder in her computer. She then added insult to injury by lying to company officials about what she had done. It was for this reason, and this reason only, not her race or gender, that her employment was terminated. Try as she may, plaintiff can point to no other individual, because none exist, that engage in similar misconduct that so blatantly violated company policy in this regard. Could you explain how other people in the company were using that data that were on the spreadsheet? Was that in general use? How did the deletion affect people? Sure. So this spreadsheet had a rating of individuals, and as those individuals would approach the company for hire in the future, for example, this would be the place that people could or would go to find out what the internal assessment of those individuals was. These were employees, or they were applicants, potential employees? Employees. They were employees. Yes, temporary employees. And did others besides the plaintiff contribute to the document, add information to the document? In this particular case, this was a document that she in her capacity as a human resources person had created. Whether other individuals utilized it or not is not part of the record one way or the other, but certainly it was on the share drive, which is an important element in this case. The fact that it was there as a resource for others to use, whether it was or whether it wasn't, is largely irrelevant in the sense that it was pertinent information for the company to use. It was available for others. It was available for others. That's exactly right. That was the purpose of it. That was why we searched it, because when she transferred to a different position and we were providing orientation to the new person, it was exactly to show them that this existed, where we found out that it had been deleted inappropriately by the plaintiff. I'd like to focus on just two issues for purposes of the argument. The first is plaintiff's heavy reliance on this court's decision in Walsh v. New York City Housing Authority. It is respectfully submitted that this reliance is totally misplaced. That case, also decided by Judge Buchwald at the district court level, involved a female plaintiff's claim that her failure to get a bricklaying job was discriminatory. This court vacated and remanded Judge Buchwald's grant of summary judgment in that case, and in a two-to-one decision, the majority disagreed with Judge Buchwald and found that she had not properly examined the record as a whole. The majority highlighted the fact that there was evidence that not a single female employee, this was a failure to hire case, had ever occupied a bricklaying position, an inexorable zero as they phrased it. In addition, there was a statement from the employer in that case that they preferred someone who was, quote, stronger, unquote, a comment that the court felt was potentially probative of a discriminatory intent. What about the slurs and the racial comments? They're in the record. They're in the record, and, you know, Judge Buchwald took all of that evidence as true, as she should have, and she analyzed those under the totality of circumstances test that's well-established law in this circuit, looking at the free . . . because they don't rise to the level of severe or pervasive in any event, and it's not just the quantity, it's also the quality of the evidence submitted. We draw your attention to footnote nine of Judge Buchwald's decision, where she addressed exactly the nature of the plaintiff's testimony in this respect. It was completely imprecise in terms of duration, context, timing. She couldn't tell us the year. She couldn't tell us the month. She couldn't tell us who was present. She couldn't tell us the frequency. So we are all forced, as was Judge Buchwald, to guess as to when and what exactly took place. Were there categorical denials by the individuals who she alleged? Of course. These are human resources professionals, and the notion that human resources professionals would even remotely engage in that conduct is outrageous in and of itself. But for purposes of summary judgment, Judge Buchwald appropriately took them as true. She looked aside from that aspect of things. Is there any case that you can cite to us involving this many alleged racial slurs? Well, the case is cited in our brief, and I take some issue with the term this many because we don't know how this many is because of the inability of the plaintiff to articulate what this many. The truth is, with all due respect to counsel, who is trying to make it sound as if this was happening all the time, there were two statements that are arguably racial, one where she was allegedly called a black bitch and the other that black people think they're the shit. And with respect to those claims, it is completely unknown in the record based on the plaintiff's testimony how often that happened and when it happened and in what context it happened. The cases cited in our brief, Augustine v. Yale, Cummings-Fowler v. Suffolk County, involved similar allegations in terms of the substance of them. In fact, in those cases, it was worse. It was way worse. In those cases, those are district court decisions that were upheld by the circuit. Ultimately, it was found that the severe and pervasive standard wasn't met. Were you incapacitated in some way in responding because of the inability to pinpoint times, places, dates, or did you have enough of an understanding about who was alleged to have made these statements and in what setting? She didn't work at the company for very long. No, and she never complained, by the way. So the company never investigated because they had no notice of this. But counsel pointed to a place in which she did complain. You dispute that? Well, it's a disputed fact that there was ever a complaint at all. In the end, six weeks prior to her termination, as part of her response to a questionnaire, she indicated that there was discrimination. And again, we argued that we had no knowledge of it, but for purposes of her decision, Judge Buchwald assumed that we did. But though in the analysis ultimately determined that the legitimate nondiscriminatory reasons with respect to any alleged adverse employment action, there was no evidence of pretext. I mean, the outrageous breach of our computer policy and with respect to her termination is a perfect example. It doesn't matter that she had complained. That's a separate and independent and completely unrelated reason for her termination. It was as if she would have hit somebody. It's the same thing. It doesn't matter that she would have complained the day before of discrimination. What happened to her had nothing to do with that. So there was no corroboratory evidence in deposition testimony or affidavits supporting the plaintiff's allegations with respect to these allegations? None. And again, going back to Judge Buchwald, the footnote 9, which I cited to the panel here, that's exactly the point. I took her deposition and we attempted to find out exactly what she was talking about. Give us the context. Tell us when. Tell us who was there so that we could investigate, so that we could determine whether there were other individuals who could corroborate or not. The truth is she mentioned not a single individual who was allegedly there who could corroborate it. So based on her completely imprecise and uncertain deposition testimony, we had no place to go, quite frankly. Unless the panel has additional questions, we're prepared to rest on all the arguments that are brief. Thank you. Thank you. Your Honor, I was taking about the defendant's claim. Defendants are making the exact same factual mistakes that had occurred with the court, claiming she never complained. I already pointed to the points where she did complain, both verbally and in writing. At worst, what this is is a factual dispute that a jury has to decide. These are credibility issues. Where is her written complaint? I already signed it to you, Your Honors. A written complaint is A244 through 246. So it's certainly in the record. And within the record as well is plaintiff's repeated details. She complained to Hal Breger. So claims that they don't know who she complained to is just factually inaccurate. She complained to Collado. She complained to Mateo. She complained in the office. She complained during her employment. Saying that there are no details at all is just not accurate. Well, on the issue of details, footnote nine in Judge Buchwald's opinion, quotes from the deposition, and your client does say repeatedly, not at this time. I don't have any details. I don't know. And the way Judge Buchwald describes it is that although she said there were comments between five and ten times, the plaintiff could not remember the month, season, or year in which the comments were made, and with one exception, the context or any additional details. Do you quarrel with that description, the district court's description of your client's testimony? Your Honor, I believe that the jury is to decide. Plaintiff did provide the information. That's not my question. I didn't ask you about the jury. I asked you whether you disagree with how the district court characterized your client's testimony. Absolutely, we disagree, Your Honor. Did she provide dates, months, years, details? Details she did, as we just said, but she did not provide precise date and time, which alone does not make her information not credible. This is piecemeal. Buchwald took all of her hostile work environment claims. And Judge Buchwald? Judge Buchwald, yes. Judge Buchwald. Judge Buchwald, just like in Walsh when this court reversed Buchwald, she took everything the plaintiff claimed and removed them from consideration piecemeal. And, Your Honor, it's important to note that defendants claim that these are critical documents, that her spreadsheet was critical. It's undisputed in the record. Linise Contreras, who replaced Plaintiff, had no idea what Plaintiff's spreadsheet meant in terms of the good bueno. She'd never seen it before and had never, and she said that no one had ever used that spreadsheet to ever determine anything about employees. And Kalado also testified and confirmed that Plaintiff was the only one to use these files. That goes to the maliciousness claim. They're claiming that Plaintiff was malicious. Plaintiff stated that she had no reason to believe that anyone ever used her spreadsheet that she created other than her. And defendants confirmed that. So how could removing that be malicious? And, again, Plaintiff? We have your argument. We have your argument. You're over. Okay, if I just may say that she wouldn't have been fired. At best, it was a conversation. It wasn't a reason to fire Plaintiff. And, again, that's for the jury to decide. Thank you. Thank you, Your Honors. A well-reserved decision.